**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ABT MOLECULAR IMAGING, INC.,[1] | Case No.  18-11398 (LSS) |
| Debtor. | **Hearing Date: July 16, 2018 @ 2:00 p.m.**<br>**Obj. Deadline: July 2, 2018 @ 4:00 p.m.** |

**MOTION OF THE DEBTOR FOR ENTRY OF (I) AN ORDER (A)
APPROVING BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS OR UNEXPIRED LEASES IN
CONNECTION WITH THE SALE, (C) SCHEDULING A SALE
HEARING, AND (D) GRANTING CERTAIN RELATED RELIEF; AND
(II) AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S
ASSETS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF**

ABT Molecular Imaging, Inc. ("ABT"), as debtor and debtor in possession (the

"Debtor") in the above-referenced chapter 11 case, hereby moves the Court (the

"Motion"), under sections 105(a), 363, 365, 503 and 507 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1,

6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the

entry of (i) an order substantially in the form attached hereto as Exhibit A (the "Bidding

Procedures Order") (a) approving bidding procedures in connection with the sale of

substantially all of the Debtor's assets (the "Bidding Procedures", a copy of which is

---

[1]      The last four digits of the Debtor's federal tax identification number are 0800 and its business address is 3024 Topside Business Park, Louisville, TN 37777.

attached as <u>Exhibit 1</u> to the Bidding Procedures Order); (b) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases; (c) scheduling a sale hearing (the "<u>Sale Hearing</u>"); and (d) granting certain related relief; and (ii) an order (the "<u>Sale Order</u>") (a) approving the Debtor's sale of assets free and clear of all claims, liens, liabilities, interests and encumbrances, (b) the assumption and assignment of certain designated executory contracts and unexpired leases, and (c) granting certain related relief.  In support of this motion (the "<u>Motion</u>"), the Debtor respectfully states as follows:

## <u>JURISDICTION, VENUE, AND STATUTORY PREDICATES</u>

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district under sections 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

3.      The Debtor consents to the entry of a final order on this Motion to the extent it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments on the relief requested consistent with Article III of the United States Constitution.

## <u>STATUS OF THE CASE</u>

4.      On June 13, 2018 (the "<u>Petition Date</u>"), ABT filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ABT continues to operate its businesses as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No

party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in this chapter 11 case.

## **BACKGROUND**

5.      ABT designs, manufactures and distributes the world's first and only small-footprint Biomarker Generator ("BG-75") for Fludeoxyglucose ($^{18}$F) ("FDG"), the imaging agent used in positron emission tomography ("PET").  ABT's mission is to provide technologies that produce PET biomarkers economically, on-demand and efficiently to the biotechnology and clinical fields, without the need for preexisting or in-depth PET radiochemistry or particle accelerator expertise. The Company targets research centers in the developed markets and emerging markets where access to the short-lived radioisotopes necessary for PET imaging is costly and limited or non-existent. The Company's self-contained BG-75 solution is uniquely tailored to increase global access to PET imaging.

6.      The factual background regarding ABT, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail, in the *Declaration of Peter Kingma in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* (the "Kingma Declaration"), filed contemporaneously herewith and fully incorporated herein by reference.

7.      As set forth therein, the Debtor faces severe liquidity and operational constraints that necessitate the effectuation of a restructuring transaction, potentially by the sale of substantially all of its assets.

A.        **The Prepetition Marketing Efforts**

8.        As a result, in 2015, ABT engaged an investment banker, SunTrust Robinson Humphrey, to assist with further capital raises or potentially a sale of the business.  That process did not yield further capital or a purchaser and ABT ended the engagement with SunTrust Robinson Humphrey in 2016.  In August 2017, ABT engaged SSG Capital Advisors, LLC ("SSG") to further market the company.

9.        In the ten months since its initial retention by ABT, SSG has contacted approximately sixty-two parties regarding ABT.  Of those parties, thirteen executed or were already parties to a non-disclosure agreement with ABT.  Certain parties that showed continued interest received access to the virtual data room and eight parties met with management regarding the opportunity.  Only one written offer was ultimately received and this party ultimately decided to not pursue the opportunity prior to executing a definitive purchase agreement

10.        Thus, despite these extensive marketing efforts, as of the date hereof, the Debtor has not identified an initial or "stalking horse bidder" for a sale of substantially all of its assets as a going concern.  The Debtor has had advanced discussions with certain parties for a going concern sale of substantially all of its assets, including receiving and negotiating a draft purchase agreement from a potential stalking horse bidder, but ultimately, as discussed above, such discussions have not yet created the desired results.

11.        Thus, ABT, in consultation with its advisors, ultimately determined that filing this chapter 11 case was the best and only viable path to maximize the value of the its assets.  As a result, ABT and SWK, negotiated term sheets regarding post-petition financing and a dual-track restructuring process.  That process first entails marketing and

sale processes proposed herein whereby ABT will consider all viable proposals submitted in accordance with these bid procedures.  With its unique, world-first technology, highly-skilled employees, representation by proven distributors in key markets around the world and the extensive marketing period leading up to the commencement of this chapter 11 case, which is ongoing, the Debtor is hopeful of securing one or more potential bidders before the proposed auction date in approximately two months.  SWK has agreed to sponsor a plan if that process fails, SWK's plan term sheet would restructure the Debtor's prepetition balance sheet and position the Debtor to exit from bankruptcy as a viable go-forward business.

<strong><u>RELIEF REQUESTED</u></strong>

12.     First, the Debtor seeks the entry of the Bidding Procedures Order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) approving the Bidding Procedures, a copy of which is attached as <u>Exhibit 1</u> to the Bidding Procedures Order, in connection with the sale of all or any portion of the Debtor's assets free and clear of liens, claims, encumbrances and other interests, (ii) scheduling a hearing to consider entry of an order approving the sale, and (iv) approving the form and manner of notice for the auction of the assets and related Sale Hearing attached as <u>Exhibit 2</u> to the Bidding Procedures Order (the "<u>Sale Notice</u>"), and the assumption and assignment of contracts in connection therewith.

13.     Second, upon conclusion of the Sale Hearing, the Debtor requests the entry of the Sale Order, to be filed with the Court before the Sale Hearing, approving the sale of substantially all of the Debtor's assets free and clear of liens, claims, encumbrances, and other interests as provided in one or more asset purchase agreements

with the bidder(s) submitting the highest or otherwise best offer(s) at the Auction, and approving the assumption and assignment of certain executory contracts and unexpired leases in connection therewith.

## SUMMARY OF PROPOSED SALE PROCESS AND PROCEDURES

14.     The Debtor proposes that the hearing to approve the Bidding Procedures be held, subject to the Court's calendar, on or before **July 16, 2018** (the "Bid Procedures Hearing"); that the bid deadline be set on or before **August 13, 2018 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); that the auction of the Debtor's assets (the "**Auction**"), if required, be scheduled 3 business days later on or before **August 16, 2018 at 10:00 a.m.**; that the Court hold a hearing to approve the sale on or before **August 17, 2018**; and that such sale close within three days thereafter.

15.     The proposed sales process is summarized below:

| Action | Deadline |
|---|---|
| **Bid Procedures Objection Deadline** | **July 6, 2018** at 4:00 p.m. (ET) |
| **Bid Procedures Hearing** | **July 16, 2018** at 2:00 p.m. (ET) |
| **Cure Objection Deadline** | **August 6, 2018** at 4:00 p.m. (ET) |
| **Bid Deadline** | **August 13, 2018** at 5:00 p.m. (ET) |
| **Auction** | **August 16, 2018**  at 10:00 a.m. (ET) |
| **Sale Objection Deadline** | **August 10, 2018** at 4:00 p.m. (ET) |
| **Sale Hearing** | **August 17, 2018** |
| **Sale Closing Date** | **August 20, 2018** |

16.     These dates have been carefully calibrated to allow parties adequate time to conduct further diligence on the Debtor's already extensively-marketed assets, and to

submit bids and engage in an auction process, while accommodating the constraints imposed by the calendar and the Debtor's strained liquidity situation.

17.     The Bidding Procedures are set forth in <u>Exhibit 1</u> to the Bidding Procedures Order.   As set forth in detail therein, the Bidding Procedures include requirements for prospective purchasers to participate in the bidding process, the availability and conduct of due diligence by prospective bidders, the deadline and requirements for submitting a bid, the method and criteria for bids to become "qualified," the manner in which qualified bids ("<u>Qualified Bids</u>") will be negotiated, clarified and improved, and the criteria for selecting the successful bidder (the "<u>Successful Bidder</u>"), including if necessary, through a public auction.  These procedures will facilitate a fair and efficient sales process that is consistent with this timeline and allows the Debtor to promptly identify the highest or otherwise best offer(s) for its assets.   The Debtor submits the proposed Bidding Procedures will facilitate a fair and efficient sale process that will maximize the realizable value of the assets under the Debtor's liquidity constraints by providing bidders and employees with structure and logistical certainty and which enables comparisons of competing offers.

**A.     <u>Proposed Notice Procedures</u>**

18.     The Debtor requests approval of the following notice procedures in connection with the proposed sale:

> a.  <u>Date, Time and Place of the Sale Hearing</u>.  The Sale Hearing will be held by the Court on August 17, 2018 or such other date and time that the Court may direct.  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the docket of this case.

b. <u>Sale Notice</u>.  Within one (1) day after entry of the Bidding Procedures Order, the Debtor will serve the Sale Notice by electronic mail (to the extent available) and by first-class mail, postage prepaid upon: (i) the Office of the United States Trustee (the "<u>U.S. Trustee</u>"); (ii) counsel to any official committee appointed in this case; (iii) non-debtor counterparties to all Potential Designated Contracts (as defined below); (iv) the 20 largest unsecured creditors of the Debtor and all parties who are known to assert a security interest, lien, or other claim or interest in or on the Debtor's assets; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service and applicable state and local taxing authorities; (vii) all applicable state attorneys general and all other government agencies required to receive notice under the Bankruptcy Rules; (viii) counsel to SWK; (ix) all parties who have expressed interest in the Assets in the last ten months; and (ix) all entities that have requested notice in this case under Bankruptcy Rule 2002 (collectively, the "<u>Sale Notice Parties</u>"). Further, within one (1) day after entry of the Bidding Procedures Order, or as soon as practicable thereafter, the Debtor will cause the Sale Notice to be published (with such reasonable modifications as are necessary or appropriate for publication) on the claims and noticing agent website at http://cases.gardencitygroup.com/mii (the "<u>Case Website</u>").

c. <u>Notice of Results</u>.  As soon as practicable after the Bid Deadline, but no later than one (1) business day after said deadline, the Debtor shall provide electronic notice on the case docket whether more than one Qualified Bid has been received and whether the Debtor will proceed with the Auction.  As soon as practicable after the Auction, but no later than one (1) day after conclusion of the Auction, the Debtor shall provide electronic notice of the results thereof on the case docket.

d. <u>Deadline for Objection to Relief Sought in the Motion</u>.  Except with respect to the proposed assumption or assignment of any Potential Designated Contracts (as defined below) or associated cure amounts, the deadline for objections to the sale of the Debtor's assets or the relief requested in the Motion with respect to the entry of the Sale Order (the "<u>Sale Objection Deadline</u>") shall be August 10, 2018 at 4:00 p.m. (ET). Objections to the Motion and entry of the Sale Order must be in writing, clearly specify the grounds for the objection, conform to the Bankruptcy Rules and the Local Rules, and be filed with the Court and be actually received by such deadline by counsel to the Debtor, counsel to SWK Funding LLC,

counsel to any official committee appointed in this case, and the U.S. Trustee (such parties, the "Objection Notice Parties").

19.    The Debtor proposes the following procedures (the "Contract Procedures") to govern the assumption and assignment of the Potential Designated Contracts in connection with the sale of its assets:

a.    Notice of Cure Amount and Potential Assignment.  Within one (1) business day of entry of the Bidding Procedures Order, the Debtor will serve copies of the Bidding Procedures Order and the assignment notice (the "Assignment Notice")," substantially in the form attached to the Bidding Procedures Order as Exhibit 3, on each non-debtor counterparty to an executory contract or unexpired lease that may be assumed and assigned to the Successful Bidder (the "Potential Designated Contracts")  If the Debtor or Successful Bidder, at any time prior to the sale closing, identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder or that were not set forth in the original Assignment Notice, the Debtor will promptly send a supplemental notice (a "Supplemental Assignment Notice") to the applicable counterparties to such additional contract.[2]

b.    Content of Notice.  The Assignment Notice may list Potential Designated Contracts individually or in groups of agreements with the same non-debtor counterparty.  The Assignment Notice shall identify either the amount that the Debtor believes must be paid to cure all defaults (the "Cure Amount") for each Potential Designated Contract or a Cure Amount for multiple Potential Designated Contracts with the same non-debtor counterparty.  If no amount is listed on the Assignment Notice with respect to a Potential Designated Contract, the Debtor believes that there is no Cure Amount applicable to such Potential Designated Contract.  The Assignment Notice may also identify any additional terms or conditions of assumption and assignment.

---

[2]    The inclusion of any contract or unexpired lease on any Assignment Notice or Supplemental Assignment Notice shall not be an admission by the Debtor or its estate that any such contract or unexpired lease is an executory contract, an admission of liability by the Debtor or its estate or effectuate the assumption or assignment of such contract or lease absent entry of such an order by the Court.

c. <u>Objections to Cure Amount</u>. Objections to any Cure Amount identified in the Assignment Notice or to the proposed assumption and assignment of any Potential Designated Contracts (excluding objections based on adequate assurance of future performance or objections relating to whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, the Successful Bidder) must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received on or before: (i) in the case of a contract included in the initial Assignment Notice sent within one business day after entry of the Bidding Procedures Order, August 6, 2018 at 4:00 p.m. (ET) (the "<u>Cure Objection Deadline</u>") or (ii) in the case of a contract included in a Supplemental Assignment Notice, on the later of 5 days after service of the Supplemental Assignment Notice or the Cure Objection Deadline.

d. <u>Failure to Object; Estoppel</u>. Any non-debtor counterparty to a Potential Designated Contract that has received notice in accordance with the foregoing and does not timely object to the Cure Amount or to the proposed assumption or assignment is deemed to have consented to such cure costs (the "<u>Cure Costs</u>") and the assumption and assignment of such Potential Designated Contract by the Debtor and to the Successful Bidder, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts, or the existence of further conditions to assumption, assignment and/or transfer must be satisfied, against the Debtor, its estate or any Successful Bidder. Notwithstanding the foregoing, as provided below, each non-debtor counterparty shall retain the right, until the Sale Hearing, to object to the assumption, assignment or transfer of its Potential Designated Contract, based solely on the issue of whether the Successful Bidder or Back-Up Bidder (as defined herein) can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

e. <u>Resolution of Cure Objections</u>. Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party and include appropriate documentation in support thereof. In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Objection no later than three (3) business days prior to the Sale Hearing, the Debtor will request that the Court resolve such Cure Objection at (a) the Sale Hearing or (b) at such other date as the Court may designate, provided that if the subject contract or lease is

assumed and assigned prior to resolution of any Cure Objection, the Cure Amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by the Successful Bidder to be held in a segregated account maintained by the Debtor's counsel or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties. Except as may otherwise be agreed to by the parties to a Potential Designated Contract, the defaults under such contract that is assumed and assigned to a Successful Bidder shall be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured by payment of the applicable Cure Amount by the Successful Bidder within ten (10) days after the closing date specified in the Purchase Agreement entered into with a Successful Bidder.

f.   <u>Contract Exclusion</u>.    Notwithstanding any authorization to assume or assign a Potential Designated Contract set forth in the Sale Order, the actual assumption and/or assignment of such Potential Designated Contract shall be conditioned upon (and shall not be effective until) the sale closing. The Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Potential Designated Contract from the list of contracts and leases to be assumed and/or assigned (including, without limitation, contracts and leases whose assumption was authorized pursuant to the Sale Order and Potential Designated Contracts subject to a pending objection at the time of the sale closing) in a sale to such bidder at any time prior to the sale closing. The non-debtor counterparty or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

g.   <u>Adequate Assurance</u>.  As soon as practicable after the Auction, the Debtor shall provide electronic notice of the results thereof on the case docket identifying the Successful Bidder and Back-Up Bidder (the "<u>Notice</u>"), and by electronic mail (to the extent available), facsimile (to the extent available) or overnight mail to the non-debtor counterparties to the Potential Designated Contracts that have been identified in such Successful Bid and Back-Up Bid. The Debtor proposes that such non-debtor counterparties have until 2 hours before the Sale Hearing to object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. The Successful Bidder or Back-Up Bidder,

as the case may be, shall work with any objecting parties to resolve any disputes and/or concerns regarding the Successful Bidder or Back-Up Bidder's ability to provide adequate assurance of future performance.  If, however, any disputes cannot be resolved in advance of the Sale Hearing, either party may seek a determination from this Court solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

h.  The Debtor's decision to sell, assign and/or transfer to the Successful Bidder or Back-Up Bidder the Potential Designated Contracts is subject to Court approval and the closing of the sale of the Assets.  Accordingly, absent such sale closing, the Potential Designated Contracts shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Potential Designated Contracts shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).  Nor shall the inclusion of any document constitute an admission of liability by the Debtor or its estate.

**B.**     **Proposed Bidding Procedures**

20.     The Bidding Procedures are intended to facilitate a fair and efficient competitive sale process for all or any part of the Debtor's assets, consistent with the timeline of this case, to enable the Debtor to promptly identify the highest or otherwise best offer for its assets.

21.     The following is a summary of the significant terms of the Bidding Procedures: [3]

---

[3]     This summary is provided in accordance with Local Rule 6004-1(c)(i) and is qualified in its entirety by reference to the provisions of the Bidding Procedures. Each capitalized term used and not otherwise defined herein shall have the meaning assigned thereto in the Bidding Procedures. To the extent of any inconsistency between this summary and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall control.

| | |
|---|---|
| **Base Price** | $5.3 Million Dollars |
| **Sale to an Insider** | The Debtor does not anticipate that the Sale under the Bidding Procedures would be to an Insider. |
| **Agreements with Management** | No agreements with management have been entered into in connection with the Sale. |
| **Releases** | No releases have been entered into in connection with the Sale. |
| **Private Sale** | The Sale is being conducted through a competitive bidding process, as detailed in this Motion |
| **Closing and Other Deadlines** | *See* ¶ 17, above. |
| **Good Faith Deposit** | To become a Qualified Bidder a proposed bidder must identify the individuals qualified to act, provide financial information sufficient to establish its ability to perform and a cash deposit of 10% of the proposed purchase price. |
| **Interim Arrangements with Proposed Buyer** | The Debtor has not entered into any interim arrangements with any proposed buyer. |
| **Use of Proceeds** | Upon Closing, the proceeds from the Sale shall be paid to the Debtor for distribution in accordance with the priorities set forth in the Bankruptcy Code. |
| **Tax Exemption** | No tax exemptions under section 1146(a) of the Bankruptcy Code are contemplated in connection with the Sale. |
| **Record Retention** | The Debtor will continue to have access to its books and records following the Sale. |
| **Sale of Avoidance Actions** | The Sale may involve the sale of any chapter 5 causes of action. |

| | |
|---|---|
| **Requested Findings as to Successor Liability** | A Successful Bidder may be undertaking certain Assumed Liabilities under that Successful Bidder's Purchase Agreement.  The Successful Bidder would only be assuming those liabilities, and all other liabilities not expressly assumed by and Successful Bidder, whether or not incurred or accrued as of the date of the Sale shall be retained by the Debtor. |
| **Sale Free and Clear of Unexpired Leases** | The Debtor is seeking to sell the Assets free and clear of all liens and other interests under Section 363(f) of the Bankruptcy Code, unless otherwise expressly provided in a Successful Bidder's purchase agreement. |
| **Credit Bids** | Credit bids by SWK will be accepted for the Assets. |
| **Relief from Bankruptcy Rule 6004(h)** | As noted below, the Debtor is requesting relief from the 14-day stay imposed by rules 6004(h) and 6006(d). |

22.    The Debtor will consider all proposals that are deemed qualified in accordance with the Bidding Procedures, and will consider proposals for the acquisition of all or substantially all of the Assets in a single sale to a single Qualified Bidder or in multiple sales to multiple Qualified Bidders.  The Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate and in consultation with any official committee appointed in this case, to modify the Bidding Procedures in any manner that will best promote the goals of the bidding process or impose, at or before the Auction, additional customary terms and conditions on such auction or sale to the extent not inconsistent with the Bidding Procedures Order.  In addition, the Debtor reserves its right to withdraw any or all assets from the sale at any time prior to the Court's approval of such sale.

23.    The Debtor will present the results of the Auction to the Court at the Sale Hearing, at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted and the

Successful Bidder(s) was properly selected in accordance with these Bidding Procedures; (b) the Auction was fair in substance and procedure; and (c) consummation of the asset sale(s) by the Successful Bidder(s) will provide the highest or otherwise best value for the assets and is in the best interests of the Debtor, its estate and creditors.  The Debtor believes that the Bidding Procedures are fair and reasonable, and are not likely to dissuade any serious potential purchaser from bidding.

### BASIS FOR RELIEF REQUESTED

24.    The Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g., Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

25.    If a debtor's proposed use of its assets under section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  The "sound business reason" test requires a trustee or debtor in possession to establish four elements:  (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor in possession

has obtained a fair and reasonable price; and (4) that the trustee or debtor in possession acted in good faith.  *Abbotts Dairies*, 788 F.2d at 143; *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

26.     The Debtor submits that its decision to proceed with a sale of its assets as set forth herein is based upon sound business judgment and should be approved.  A sale offers a great opportunity to maximize value for the estate, and the process for marketing and selling the assets described in the Bidding Procedures, in light of the extensive prepetition marketing efforts and the liquidity constraints, presents the best method by which the Debtor can promote a competitive sale process as well as provide interested parties with reasonable notice of the sale.  Effectuating a sale under the terms of the Bidding Procedures allows the Debtor to conduct the Auction in a controlled, fair and open fashion – with a demonstrable end point – that will encourage participation and thereby increasing the likelihood that the Debtor will receive the best possible consideration for its assets.

27.     Further, the Debtor is permitting prospective purchasers to bid on all or any part of its assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process.  Accordingly, all parties in interest can be assured that the consideration received for any assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied. Finally, the Debtor submits, and will demonstrate at the Sale Hearing, the Purchase Agreement entered into with the Successful Bidder will be the result of good faith arms' length negotiations with the Successful Bidder(s) and that the validity of such

transactions should not be affected by any reversal or modification on appeal of any order approving such transaction except if stayed pending appeal.

## A.    The Bidding Procedures Are Warranted

28.    A paramount goal in any proposed sale of property of the estate is to maximize the proceeds received for the benefit of creditors. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004) (finding that the debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); *Four B. Corp. v. Food Barn Stores, Inc. (In re Barn Stores, Inc.),* 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").    Courts recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions.  *See In re O'Brien Envtl. Energy, Inc.,* 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992) (noting that bid procedures "encourage bidding and . . . maximize the value of the debtor's assets").

29.    The Debtor submits that the Bidding Procedures provide a fair, orderly and uniform mechanism by which interested buyers and investors can submit offers for the Assets and will produce a competitive and fair bidding process.  The Debtor believes that the Bidding Procedures will promote active bidding from interested parties, are not likely to dissuade any serious potential bidder, and will result in the best and highest offer reasonably available for such assets. The Bid Procedures are consistent with other procedures routinely approved by courts in this and other districts, and are appropriate

under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See In re O'Brien Envtl. Energy, Inc.,* 181 F.3d at 537; *see also In re Dura Auto. Sys., Inc.,* No. 06-11202 (Bankr. D. Del. July 24, 2007); *In re New Century TRS Holdings, Inc.,* No. 07-10416 (Bankr D. Del. Apr. 20, 2007); *In re Three A's Holdings, L.L.C.,* No. 06-10886 (Bankr. D. Del. Sept. 7, 2006).

30.     As noted above, the Debtor, first with the assistance of SunTrust Robinson Humphrey and then with the assistance of SSG, has been looking for strategic buyers, financial buyers, or other sources of capital providers for more than a year.  Throughout that process, the Debtor has exhaustively marketed itself and its assets for sale, and multiple interested parties conducted significant due diligence.  Nonetheless, the Bid Procedures will allow any prospective bidders and other interested parties time before the Bid Deadline to conduct any due diligence required. If other interested parties are discovered, the Debtor will provide every possible opportunity to such parties to conduct the due diligence such parties need to submit the best possible Qualified Bid.  The Debtor submits that a lengthier process is not likely to benefit any bidder, all of whom have had extensive time to engage in due diligence and will have yet more time to do so during this process.

**B.     The Form and Manner of Notices Should Be Approved**

31.     The Debtor is required to notify creditors of the Auction and the sale, including a disclosure of the date, time, and place of the Auction, the terms and conditions of the sale, the date, time, and place of the Sale Hearing, and the deadlines for filing any related objections.  The Debtor submits that the Sale Notice, substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order, complies with

Bankruptcy Rule 2002 and provides reasonable, timely and adequate notice of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing, and the relevant deadlines for any objections thereto, to the Debtor's creditors and all other parties-in-interest that are entitled to such notice.  Further, the Debtor submits that the proposed Sale Objection Deadline is reasonable and appropriate under the circumstances, and provides parties in interest with adequate notice in accordance with the Bankruptcy Rules and the Local Rules.

32.    The Debtor submits that the notice to be provided via the Assignment Notice is reasonably calculated to provide all counterparties to the Potential Designated Contracts with proper notice of the potential assumption and assignment of its executory contracts or unexpired leases, any Cure Costs relating thereto and the Contract Procedures, including without limitation the objection deadlines thereunder.  As such, the proposed Assignment Notice is appropriate and sufficient under the circumstances.

33.    The Debtor submits that the notice to be provided through the Sale Notice and the method of service proposed herein fully complies with the requirements set forth in Bankruptcy Rule 2002 and constitutes good and adequate notice of the Bidding Procedures and the subsequent proceedings related thereto.  Accordingly, the Debtor requests that the Court approve the notice procedures and objection deadlines set forth in this Motion, including the form and manner of service of the Sale Notice, and that no other or further notice of the Sale, the Bidding Procedures or the Auction is required.

## C.    <u>The Sale Should be Approved</u>

34.    The Debtor, in its sound business judgment and in consultation with its advisors and key constituents, has determined that it is in the best interests of the

Debtor's estate and creditors, and other parties-in-interest, to sell all or substantially all of its assets.  The proposed sale should be approved to realize the most value reasonably available to the estate and to avoid further losses and reductions in value.

### i.    The Sale Schedule is Reasonable and Justified

35.    The Debtor is operating with significant negative cash flow as it attempts to preserve going concern value for the benefit of its creditors.  Delays in the sale process may cause the Debtor's employees to seek other employment and may force the Debtor to convert or dismiss this case and immediately liquidate, which is not in the interests of creditors.

36.    It is critical for the Debtor to consummate the Sale on the proposed timeline in order to maximize value for its estate while minimizing administrative expenses and the sale process set forth herein is reasonable.

37.    The Debtor believes that the timeline for the marketing and sale of its assets is adequate under the circumstances, especially considering the marketing efforts that occurred prior to the Petition Date.  As previously described to the Court, the Debtor and its advisors have analyzed the Debtor's operations and reasonably available alternatives and extensively marketed its assets prepetition.  Following the Petition Date, SSG, in coordination with the Debtor's officers and professionals have continued contacting potentially interested parties.  Interested parties with an executed NDA will be provided access to a robust data room that has been updated with the most recent and relevant information to help expedite diligence.  Additionally, site visits and calls or meetings with management will be facilitated on a timely basis as requested.  Thus, the Debtor submits that the proposed sale contemplates an open and robust auction process

with minimum barriers to entry and provides potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well informed bid.

38.     Moreover, a sale of the assets on the timeline set forth herein minimizes the administrative expenses, while ensuring an appropriate post-petition marketing process that provides sufficient time for the Debtor and its advisors to reengage prior involved or contacted parties, and attempt to identify any new interested parties.

### ii.     The Sale Should be Free and Clear

39.     The Debtor requests authority to sell the assets free and clear of all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other interests on or in the assets attaching to the consideration received in the same order or priority and with the same force, validity and effect as such with respect to such assets prior to the sale.

40.     Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is met:

a.   applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

b.   the party asserting the lien, claim or interest consents to the sale;

c.   the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

d.   the interest is the subject of a bona fide dispute; or

e.   such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

41.     No prepetition creditor, other than SWK who has consented, has any valid security interest in the assets to be sold, thereby satisfying section 363(f) of the Bankruptcy Code.  In the event that any such creditors exist, the Debtor will provide all creditors notice of the proposed sale and an opportunity to object, and absent objection any such creditor will be deemed to have consented to such sale.  Further, any such creditors could be compelled to accept a money satisfaction of such interest, and such interest will attach to the net proceeds of the sale with the same validity and in the same relative priorities established under applicable nonbankruptcy law.  Accordingly, approval of the sale of the assets free and clear of all liens, claims, encumbrances, and other interests is warranted.

### iii.     The Successful Bidder Should Receive Section 363(m) Protections

42.     The Bankruptcy Code offers protections against reversal or modifications on appeal of orders approving sales to "good faith" purchasers except if subject to a stay pending appeal.  11 U.S.C. § 363(m).  Courts have explained that good faith in such contexts refers "to the integrity of [the purchaser's] conduct in the course of the sale proceedings." *Abbott Dairies*, 788 F.2d at 147 (citations omitted) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders");

43.    The Debtor will establish at the Sale Hearing that such protections should be granted to the Successful Bidder.  Any sale agreement will be the culmination of a negotiation process in which parties will be represented by counsel and negotiations will continue to be conducted on an arm's-length basis, and the purchaser will be required to make representations regarding its conduct in entering into the agreement and at the auction.  Under the circumstances, this Court will have a sufficient factual and legal basis to find that the Successful Bidder is entitled to all of the protections of section 363(m) of the Bankruptcy Code.

### iv.    The Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases are Warranted

44.    To facilitate and effectuate the sale of the Assets, the Debtor seeks authority to assume and assign various Potential Designated Contracts to the Successful Bidder to the extent required by such Successful Bidder in accordance with the Contract Procedures.  Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *In re Sharon Steel Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re AbitibiBowater, Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009).

45.    The Contract Procedures provide for the resolution of cure amount issues between the parties or by the Court as necessary.  The Debtor will select an appropriate Successful Bidder and will provide the requisite adequate assurance for the non-debtor

counterparties to Potential Designated Contracts at issue.   The meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction.   *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *274 (Bankr. D. Del. Aug. 15, 2007).   Among other things, adequate assurance may be provided by demonstrating the assignee's financial wherewithal and experience with similar businesses or property.   *See, e.g., id.*; *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance based on proposed assignee's "financial resources" and experience).

46.      At the Sale Hearing, the Debtor will demonstrate the Successful Bidder has the financial resources, willingness and ability to perform that provides the requisite adequate assurance for any executory contract or unexpired lease to be assumed and assigned to such bidder.   The Sale Hearing will provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the Potential Designated Contracts, as required under section 365(b) of the Bankruptcy Code. The Court should therefore authorize the Debtor to assume and assign the Potential Designated Contracts as set forth herein.

## **REQUEST FOR WAIVER OF LOCAL RULE 6004-1(b)**

47.      Local Rule 6004-1(b) requires, among other things, that any motion to sell property of the estate under section 363 of the Bankruptcy Code attach "[a] copy of the proposed purchase agreement, or a form of such agreement substantially similar to the one the debtor reasonably believes it will execute in connection with the proposed sale [and a] copy of a proposed form of sale order."   Del. Bankr. L. R. 6004-1(b).   As set forth

above, the Debtor and its professionals have been and are continuing an aggressive marketing of the assets.  Nevertheless, the terms of the sale of the assets, including, in particular, the potential distribution of assets among lots, potential bases to calculate the purchase price of such Assets, and the extent of assumed liabilities, are uncertain as of the date hereof.  Any such forms the Debtor might submit at this time would be merely generic in nature, rather than based on any actual transaction or terms being proposed, and the ultimate transaction(s) and term(s) proposed could differ materially from any speculative forms presented at this time.  Consequently, filing such forms would offer little benefit and may be confusing to the parties receiving notice of this Motion.  Accordingly, the Debtor requests a waiver of the provisions of Local Rule 6004-1 to the extent applicable.  As set forth in the Bidding Procedures, which require Qualified Bids to be substantially in the form of purchase agreement prepared by Debtor's counsel, such form will be made available to all potential bidders who have executed a confidentiality agreement approved by the Debtor and its counsel in connection with the Debtor's ongoing sales process.  Additionally, the Debtor will file and serve a form of the Sale Order at least 21 days in advance of the Sale Hearing.

### REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)

48.    The Debtor requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above and in the Kingma Declaration, the Debtor does not have the liquidity or ability to meet operating expenses after that date unless the proposed sale closes. If the sale of the Acquired Assets cannot

be consummated immediately following the Auction and the Sale Hearing, the Debtor may be forced to convert or dismiss this case to the detriment of its estate and creditors. To maximize the value of the assets and to minimize unnecessary administrative expenses, it is critical that the Debtor consummate a sale on the timeline proposed. Accordingly, the Debtor requests that the automatic fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## **NOTICE**

49.    Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) creditors holding the 20 largest unsecured claims as set forth in the list filed with the Debtor's petition; (c) counsel for SWK; (d) those parties requesting notice under Bankruptcy Rule 2002; (e) the Office of the United States Attorney General for the District of Delaware; (f) the Internal Revenue Service; and (g) the Securities and Exchange Commission.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter the Bidding Procedures Order, substantially in the form attached as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 18, 2018
      Wilmington, Delaware

BAYARD, P.A.

*/s/ Erin R. Fay*
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
Gregory J.  Flasser (No. 6154)
600 N. King Street, Suite 400
Wilmington, Delaware  19801
Phone: (302) 655-5000
Email: jalberto@bayardlaw.com
      efay@bayardlaw.com
      dbrogan@bayardlaw.com
      gflasser@bayardlaw.com

*Proposed Counsel for the Debtor and Debtor-in-Possession*